549 So.2d 283 (1989)
Alma Bennett BACKHUS and Lawrence H. Backhus
v.
TRANSIT CASUALTY COMPANY, Bruce Boat Rentals, Inc., Placid Oil Company, Greyship Corporation and Louisiana Insurance Guaranty Association.
No. 88-C-2722.
Supreme Court of Louisiana.
September 12, 1989.
Rehearing Denied December 7, 1989.
*284 R. Scott Ramsey, Jr., Morgan City, for applicant.
David Barnett, Peter Hilbert, Jr., McGlinchey, Stafford & Mintz, New Orleans, Carey Guglielmo, Thomas E. Balhoff, Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, R.A. Redwine, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for respondents.
DIXON, Chief Justice.
The principal issue presented by this maritime personal injury suit is whether "protection and indemnity" insurance constitutes "ocean marine insurance" under the terms of the Louisiana Insurance Code and the Insurance Guaranty Association Law, R.S. 22:1375 to 22:1394. Under this law, the Louisiana Insurance Guaranty Association provides payment for "covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...." R.S. 22:1376. Although the statute offers this protection for "direct insurance," it nevertheless excepts from protection certain types of direct insurance, among which is "ocean marine insurance." R.S. 22:1377.
The litigation now before this court arose out of an injury plaintiff Alma Backhus sustained while on board the M/V Patricia Bruce. On May 30, 1983, the M/V Patricia Bruce arrived at the Placid Oil Company dock in Morgan City, Louisiana, carrying Teascorp Energy Services' workover equipment, which it had transported from one of Placid's platforms in the Gulf of Mexico. While the equipment was being unloaded, Alma Backhus, the vessel's cook, left to purchase groceries. When Mrs. Backhus returned, she allegedly slipped and fell in a puddle of oil on the deck of the vessel *285 where the workover equipment had rested. According to the vessel's captain, the oil was not on the deck prior to the equipment's having been placed there.
Mrs. Backhus and her husband Lawrence brought suit under the Jones Act, 46 U.S.C. App. sec. 688, and under the General Maritime Law against (1) Bruce Boat Rentals, Inc., her employer and the operator of the vessel via bareboat charter; (2) Greyship Corporation, the title owner of the M/V Patricia Bruce; (3) Placid Oil Company, the company for which the vessel was working at the time of the accident; and (4) Transit Casualty Company, an insurer of Bruce Boats under a protection and indemnity policy and under a Standard Workers' Compensation and Employers' Liability policy. Although both policies provided maintenance and cure coverage, the workers' compensation policy contained an escape clause making such coverage available only if a protection and indemnity policy were not in force.
Shortly after this suit was filed, Bruce Boats sought Chapter 11 protection. A few weeks later, the Missouri Insurance Commissioner declared Transit insolvent, placed it in receivership, and canceled all its policies of insurance effective December 20, 1985. The plaintiffs then amended their petition to add the Louisiana Insurance Guaranty Association and Angelina Casualty Company, an excess insurer of Bruce Boats on the Standard Workers' Compensation and Employers' Liability policy, as defendants. Plaintiffs later added Teascorp (now presumably called Energy Workover), the owner of the equipment that allegedly leaked, and the vessel itself, the M/V Patricia Bruce, as defendants.
Mrs. Backhus sought maintenance and cure from the Louisiana Insurance Guaranty Association and from Angelina, both of which denied they had any such obligation. The trial court agreed with Angelina that the protection and indemnity policy, not the workers' compensation policy, was the policy in force at the time of the accident and that, consequently, Angelina had no liability under the law. The court also ruled that protection and indemnity insurance is a type of "ocean marine insurance" and that under R.S. 22:1377, the Louisiana Insurance Guaranty Association had no liability to Mrs. Backhus.
Following denial of plaintiffs' motion for maintenance and cure, the Louisiana Insurance Guaranty Association and Angelina brought motions for summary judgment seeking dismissal of plaintiffs' claims against them. The trial court granted their motions. Later, Greyship brought a motion for summary judgment, which the court also granted.
The court of appeal consolidated the plaintiffs' devolutive appeals from the grants of summary judgment and affirmed the trial court's decisions dismissing all three defendants. Backhus v. Transit Casualty Co. et al, 532 So.2d 447 (La.App. 1st Cir.1988), writ granted, 540 So.2d 322 (La.1989). Regarding the plaintiffs' claims against Greyship, the appellate court found that a valid bareboat charter existed; that Greyship did not create the condition causing the accident and thus was not negligent; and that Greyship was not liable under the law for the transient unseaworthy condition that occurred on board the bareboat chartered vessel.
The court also agreed with Angelina that the workers' compensation policy language restricting its application if a protection and indemnity policy were "in force" was unambiguous; that the date of the accident was the date on which the plaintiffs' claims arose; that a protection and indemnity policy was "in force" on that date; and that Angelina had no exposure as excess carrier because the workers' compensation policy was not the primary policy.
Concerning the claims against the Louisiana Insurance Guaranty Association, the court of appeal noted the lack of a statutory definition of "ocean marine insurance," as well as a dearth of state jurisprudence interpreting the scope of the term. The court focused instead on the definition in the legal literature of "ocean marine insurance," a definition that includes protection and indemnity insurance as a traditional type of marine insurance indemnifying a shipowner or operator against liability *286 for damage to property, to cargo, and to crew members for personal injury or loss of life.
This court granted writs to consider whether the lower courts properly granted the motions for summary judgment in favor of the Louisiana Insurance Guaranty Association, Angelina, and Greyship. For the reasons set out below, we affirm.

LIABILITY OF LOUISIANA INSURANCE GUARANTY ASSOCIATION
Mrs. Backhus seeks compensation from the Louisiana Insurance Guaranty Association for the maintenance and cure payments due her under the Transit protection and indemnity policy. R.S. 22:1377, however, excludes from Louisiana Insurance Guaranty Association coverage "ocean marine insurance." Accordingly, this court must first determine whether the protection and indemnity policy or the workers' compensation policy was in effect. If the workers' compensation policy was in effect, then under this court's reasoning in Deshotels v. SHRM Catering Services, Inc., 538 So.2d 988 (La.1989), the Louisiana Insurance Guaranty Association must stand in the shoes of the insolvent insurer and must assume Transit's liability for maintenance and cure payments to Mrs. Backhus. If, however, as the Louisiana Insurance Guaranty Association contends, the protection and indemnity policy and not the workers' compensation policy was in effect, then the Louisiana Insurance Guaranty Association has no liability under the statute because R.S. 22:1377 exempts from Louisiana Insurance Guaranty Association coverage "ocean marine insurance," which, argues the Louisiana Insurance Guaranty Association, encompasses Protection and Indemnity insurance.
1. The policy "in force" at the time of the accident
At the time of Mrs. Backhus' accident, Bruce Boats was covered by several policies, two of which are important in this litigation. The protection and indemnity policy issued by Transit provided coverage in lines 10-16 of the policy for personal injury claims. The policy further provided in endorsement number six that the policy's coverage of additional assureds was identical to that of the vessel's owner and that the policy provided primary coverage:
"It is expressly agreed that the insurance afforded by this policy is, and for all purposes shall be deemed to be primary of all other insurance, and any `other insurance clause' contained in this policy is hereby deleted."[1]
The workers' compensation policy Bruce Boats held with Transit also provided coverage for maintenance and cure:
"To pay on or behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease...." Coverage B, Maritime Endorsement to Standard Workers' Compensation and Employers' Liability policy.
The workers' compensation policy did contain, however, an escape clause that prevented its coverage from attaching "with respect to any liability of the insured if there is in force for the insured or for his benefit a protection and indemnity or similar policy which would cover any part of such liability except for an "other insurance *287 clause, deductible or limitation of liability clause or similar clauses."
The plaintiffs urge this court to adopt the position that this exclusion became inapplicable when the Missouri Commissioner of Insurance canceled all Transit policies. Since the protection and indemnity policy was no longer in effect, plaintiffs reason that the coverage they seek was available under the workers' compensation policy. Such a result assumes that when the Missouri Commissioner of Insurance ordered all Transit policies canceled, the workers' compensation policy remained in force longer than the protection and indemnity policy and that all personal injury coverages under the protection and indemnity policy defaulted to the workers' compensation policy. The record, however, indicates that the Commissioner canceled all policies simultaneously.
The plaintiffs also urge this court to find that the clauses relating to other insurance in both these policies are mutually repugnant and would result in no coverage were they given effect. The language of the policies, however, will not support such an interpretation. The workers' compensation policy escape clause noted above unambiguously states that the policy offered no coverage if a protection and indemnity policy or other similar policy were in force. Unlike the policy in Gros v. Houston Fire & Casualty Insurance Co., 195 So.2d 674 (La.App. 1st Cir.1967), writ denied, 250 La. 644, 197 So.2d 898 (1967), the workers' compensation policy in this case does not make coverage contingent on whether the protection and indemnity insurance is "valid and collectible." While this court has yet to rule directly on this issue, the appellate courts of this state have held that whether insurance is "valid and collectible" when such language is contained in other insurance clauses must be determined at the time of judgment. Beauregard v. Salmon, 205 So.2d 634 (La.App. 2d Cir. 1967); Gros v. Houston Fire & Casualty Insurance Co, supra, writ denied, 250 La. 644, 197 So.2d 898 (1967). Plaintiffs have cited no authority, and we have found none, supporting their argument that a policy being "in force" means that claims against it must be "valid and collectible" at the time of judgment. Nor is there any contention that either the protection and indemnity policy or the workers' compensation policy contained an "other insurance" clause limiting coverage if "other insurance" was "valid and collectible." On the contrary, endorsement six of the protection and indemnity policy proclaims it to be the primary policy and nullifies any "other insurance" clauses that it may have contained. As a result, the two policies at issue in this case were mutually exclusive: if the protection and indemnity policy were in effect, there was no coverage for maritime claims under the workers' compensation policy; if the protection and indemnity policy were not in effect, there was coverage for maritime claims under the workers' compensation policy. Accordingly, since the escape clause in the workers' compensation policy is not offset by an "other insurance" clause in the protection and indemnity policy that, when read together, would render both policies inapplicable, the escape clause in the workers' compensation policy must be viewed as any other clause that excludes coverage when the same risks are covered by a different primary policy. The lower courts correctly gave effect to this clause and found that the protection and indemnity policy alone was in force to provide coverage for Mrs. Backhus at the time of her accident.
2. Ocean Marine Insurance
If protection and indemnity insurance constitutes a type of "ocean marine insurance," the Louisiana Insurance Guaranty Association has no obligation to provide protection to the plaintiffs. Although the Louisiana Insurance Code does not directly define the term "ocean marine insurance," R.S. 22:6(13) does define "marine and transportation (inland marine)" insurance by delineating five categories of such insurance. The first of these categories is insurance against loss or damage "to vessels... as well as all goods, freights, cargoes... in connection with any or all risks or perils of navigation, transit or transportation... on or under any seas or other *288 waters, including marine builder's risks and all personal property floater risks." The second category is "insurance against loss or damage to persons or property in connection with ... marine, inland marine, transit or transportation insurance, including liability for loss of or damage to either arising out of ... the construction, repair, operation, maintenance, or use of the subject matter of such insurance." Insurance against loss or damage to precious metals, stones, and other similar objects in transportation or otherwise constitutes the third category. The fourth category of insurance covers damage against loss or damages to bridges, tunnels, piers, wharves, and similar "instrumentalities of transportation and communication" that might be damaged by vessels, aircraft, or other vehicles using them. The fifth category of insurance is "Marine protection and indemnity insurance:"
"`Marine protection and indemnity insurance' meaning insurance against, or against legal liability of the insured for, loss, damage, or expense incident to ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss of or damage to the property of another person." R.S. 22:6(13)(e).
This statutory definition of marine insurance, as including both property insurance and liability insurance based on the risks associated with transportation, comports with that found in the literature. Commentators have defined "ocean" or "wet" marine insurance as insurance traditionally associated with the perils encountered by the maritime industry. 1 A. Brunck, V. Simone, C. Williams, Ocean Marine Insurance 1-4 (1988). "Inland Marine" insurance grew out of ocean marine insurance and is designed to cover the general risks inherent in land transportation. Id. Ocean marine insurance, although usually thought of in connection with oceangoing vessels and their cargoes, "also includes insurance on other water exposures such as those associated with inland waterways and ... offshore platforms.... Ocean marine insurance covers international air shipments as well as transportation by land or air that is part of a water shipment or an international air shipment...." Id. at 1. Such insurance also covers "the liabilities of shipowners, marinas, stevedores, and others for injuries or damage to third parties." Id. The property insurance aspect of marine insurance comprises hull insurance and cargo insurance, while the liability insurance consists of collision liability insurance (the "running down clause"), protection and indemnity insurance, and other miscellaneous liability insurance. Id.
The type of insurance at issue in this case, protection and indemnity insurance, was developed in England and America in the 1840s and 1850s to cover the collision liabilities of the vessel owner arising out of negligence. Such risks were not covered under the standard hull policy and had developed as a result of the growth in passenger services and the development and expansion of the field of tort law. 2 A. Parks, The Law and Practice of Marine Insurance and Average 843 (1987). The standard modern protection and indemnity policy now covers many different risks, including excess collision damages, loss of life or injury to any person not covered under a state or federal compensation scheme, damages by the vessel to docks and similar structures, pollution liabilities, and the expenses of investigation and defense. Id. at 842. The protection and indemnity insurance at issue in this case follows the standard SP-38 form and encompasses similar risks; lines 14-16 of the policy cover payments for maintenance and cure, a seaman's right growing out of the employment relationship.[2] See generally The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); J. Shields, Seamen's *289 Right to Recover Maintenance and Cure Benefits, 55 Tul.L.Rev. 1046 (1981).
Under the terms of our code, this court must give to the words of a law their generally prevailing meaning, while words of art and technical terms must be given their technical meaning when the law involves a technical matter. C.C. 11. It follows, therefore, that this court may construe a statute "with reference to the habits of the business prevalent among the people to whom the statute applie[s]." In re Hibernia Bank and Trust Co., 185 La. 448, 461, 169 So. 464, 468 (1936). Protection and indemnity insurance is consistently treated as marine insurance within the industry. See D. Bickelhaupt, General Insurance 542 (10th ed. 1979); W. Rodds, Marine Insurance: Ocean and Inland 51-81 (1970). This common usage, coupled with the inclusion of protection and indemnity insurance under the definition of marine insurance in R.S. 22:6(13), leads to the conclusion that the term "ocean marine insurance" includes protection and indemnity insurance and that protection and indemnity insurance, absent some intent on the part of the legislature to protect individuals entitled to recover under protection and indemnity policies, falls within the "ocean marine insurance" exception to Louisiana Insurance Guaranty Association protection.
3. The Louisiana Insurance Guaranty Law
During the 1950s and 1960s, increased public concern over automobile insurer insolvencies led to proposed federal legislation designed to protect insureds and third parties injured in automobile accidents. 19A J. Appleman & J. Appleman, Insurance Law and Practice sec. 10801, 365 n. 2 (1982). The National Association of Insurance Commissioners opposed these proposals, however, and in 1969 adopted the Post-Assessment Property and Liability Insurance Guaranty Association Model Act. Duncan, The NAIC Model Property and Casualty Post Assessment Guaranty Funds, in Law and Practice of Insurance Company Insolvency 459, 460 (Nat'l Inst. on Insurer Insolvency 1986). Insurance guaranty funds now operate in every state except New York (which maintains its own pre-insolvency assessment fund), and in Puerto Rico, the Virgin Islands, and the District of Columbia. All but two statutes creating these funds, those of California and Wisconsin, are based on the Model Act. Id.
In 1970, the Louisiana Legislature created the Insurance Guaranty Association Fund,[3] more commonly known as the Louisiana Insurance Guaranty Association, in order to lessen the hardships created by insurance company insolvencies. R.S. 22:1375. Although not so stated in the statute or in the accompanying notes, much of the text of R.S. 22:1375 to 22:1394 was taken almost verbatim from the Model Act, including the express statement of purpose in sec. 1376.[4] The legislature underscored the purpose of the act by mandating that it be "liberally construed to effect the purpose... which shall constitute an aid and guide to interpretation." R.S. 22:1378. Accordingly, "[t]he provisions of the Insurance Guaranty Association Act must be interpreted to protect claimants and policyholders and to advance their interests rather than the interest of the association." Senac v. Sandefer, 418 So.2d 543, 546 (La. 1982).
The rules of statutory construction require this court to determine the intent and purpose of the legislature in enacting the law and to give effect, if possible, to that intent and purpose. Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962). The purpose of the Insurance Guaranty Law is "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...." R.S. 22:1376 *290 (emphasis added). A "`covered claim' means an unpaid claim ... which arises out of and is within the coverage ... of an insurance policy to which this Part applies...." R.S. 22:1379(3). The scope of the Law, as delineated in sec. 1377, includes all direct insurance but does make a few exceptions, among which is "ocean marine insurance." In Deshotels v. SHRM Catering Services, supra, this court recently held that because the categories of insurance not subject to coverage under the Law constitute different kinds of policies rather than different kinds of risks, a claim brought under a workers' compensation policy with a maritime endorsement was not a claim brought under an "ocean marine insurance" policy and was thus subject to Louisiana Insurance Guaranty Association protection. Following that reasoning, it is apparent that claims for maintenance and cure brought under a protection and indemnity policy, which is ocean marine insurance, is not a covered claim subject to Louisiana Insurance Guaranty Association protection because sec. 1377 excludes ocean marine insurance from Louisiana Insurance Guaranty Association protection.
The plaintiffs urge this court to focus on the "protection" aspect of protection and indemnity insurance and to find that such insurance, which is insurance for the protection and benefit of employees, is clearly the type of insurance to which Louisiana Insurance Guaranty Association protection was intended to apply. Under the statutory interpretation doctrine of ejusdem generis, plaintiffs contend that the legislature intended to exclude from Louisiana Insurance Guaranty Association coverage only indemnity types of ocean marine insurance, since all the other types of direct insurance excluded from Louisiana Insurance Guaranty Association protection are types of indemnity insurance. See Boudreaux v. LeBlanc Welding & Construction, Inc., 515 So.2d 809 (La.App. 1st Cir.1987) (via ejusdem generis, inclusion of "ocean marine" with other types of indemnity insurance means the legislature intended to exclude "ocean marine" indemnity (property) insurance rather than "ocean marine" liability insurance from Louisiana Insurance Guaranty Association coverage), vacated, 519 So.2d 771, 772 (La. 1988). We agree that such an interpretation would support the purpose of the Louisiana Insurance Guaranty Association and would be in keeping with its spirit. That interpretation, however, is not supported by the language of the statute itself, which excludes "ocean marine insurance" and makes no such distinctions. Nor does the Insurance Code as a whole differentiate between the property and liability types of ocean marine insurance. For example, in R.S. 22:1403, the legislature defined the scope of rate regulation of the Louisiana Insurance Rating Commission. In section A, the legislature made rate regulation applicable to marine and transportation (inland marine) insurance. In section B, the legislature defined marine and transportation insurance (inland marine) as including "personal floater insurance and the kinds of insurance defined in paragraph (13) of R.S. 22:6...." But in section C, the legislature proceeded to restrict the type of marine insurance subject to regulation by making rate regulation inapplicable "[t]o insurance of vessels or craft, their cargoes, marine builders' risks, marine protection and indemnity; or other risks commonly insured under marine, as distinguished from inland marine, insurance policies." (Emphasis added).
Similarly, in R.S. 22:1249(B), the legislature excepted from the acts defined as transacting the business of insurance by an unauthorized insurer those transactions involving "insurance on vessels, crafts, hulls, cargoes, marine builders risks, marine protection and indemnity or other risks including strikes and war risks commonly insured under ocean or wet marine forms of policy." (Emphasis added).
Further, R.S. 22:6(13) makes no distinction in defining marine insurance between the property types and the liability types of marine insurance, a statutory definition of marine insurance markedly different from that found in many states. For example, the insurance codes of Delaware, Florida, and Maryland contain definitions of "marine insurance" similar to that found in *291 R.S. 22:6(13). Each of those codes, however, recognizes the dual nature of marine insurance by distinguishing between insurance against loss or damage to property and marine protection and indemnity insurance. Compare Del.Code Ann. tit. 18, § 907 (1975); Fla.Stat. § 624.607 (1987); Md.Ann.Code art. 48A, § 70 (1986), with La.R.S. 22:6(13). These codes also recognize that "marine insurance" is a more inclusive term than "ocean marine insurance" and proceed to define that term as well. All, however, include protection and indemnity insurance within the definition of "ocean marine insurance."
This court has refused in the past to deal in hypertechnical constructions of a statute to deny benefits when the plain words of the statute will lend themselves to a reasonable interpretation that will carry out the legislative intent. Guste ex rel. Courville v. Burris, 427 So.2d 1178 (La.1983). This court has also endeavored to give to ambiguous statutory words and phrases the construction that is most consistent with the stated legislative intent and which will make the statute applicable to all persons similarly situated. Id.; Freechou v. Thomas W. Hooley, Inc., 383 So.2d 337 (La.1980), on remand, 413 So.2d 238 (La. App. 4th Cir.1982). While this court can consider the reason and spirit of a law that brought about its enactment, Keelen v. State Dept. of Culture, Recreation, and Tourism, 463 So.2d 1287 (La. 1985), it is not free to rewrite the law to effect a purpose that is not otherwise expressed. A liberal interpretation of the Insurance Guaranty Law, even though authorized by the Law itself, cannot overcome the specific statutory exemptions from coverage under that law. There is nothing in the Insurance Code to indicate that the Louisiana Legislature intended to exclude from Louisiana Insurance Guaranty Association protection only that aspect of ocean marine insurance related to property interests. On the contrary, the unified definition of marine insurance found in R.S. 22:6(13), when coupled with the specific limitations contained in R.S. 22:1249 and R.S. 22:1403 (excepting certain types risks commonly insured under ocean or wet marine insurance policies from coverage under those statutes), indicates that the legislature was aware of the distinctions that are commonly made between types of marine insurance. Accordingly, this court must presume that the legislature could have restricted the exception contained in R.S. 22:1377 to ocean marine insurance affecting property had it desired to do so.[5]
In deciding that protection and indemnity insurance is ocean marine insurance and that the ocean marine exception to Louisiana Insurance Guaranty Association protection encompasses both property and liability coverages, this court is aware that an anomalous situation now exists with regard to Louisiana Insurance Guaranty Association responsibility for maritime personal injury claims. Under Deshotels, the Louisiana Insurance Guaranty Association is responsible for maintenance and cure owed by an insolvent insurer under a workers' compensation policy with a maritime endorsement, because such a policy does not *292 constitute "ocean marine insurance." The Louisiana Insurance Guaranty Association is not responsible, however, for maintenance and cure owed by an insolvent insurer under a protection and indemnity policy, because such a policy does constitute "ocean marine insurance."[6] In the absence of more specific statutory definitions or statements authorizing expansive interpretation of Louisiana Insurance Guaranty Association coverage in spite of the statutory exclusions, we are unable to find the language of the statute susceptible of any different meaning; accordingly, resolution of this anomaly must rest with the legislature.
4. The Appropriateness of Summary Judgment
Under the terms of C.C.P. 966, "[a] motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Vermilion Corporation v. Vaughn, 397 So.2d 490 (La. 1981). For the reasons noted above, this court finds that the only policy in effect at the time of the injury to Mrs. Backhus was the protection and indemnity policy and that the protection and indemnity policy constitutes "ocean marine insurance." The policy is thus excluded by statute from Louisiana Insurance Guaranty Association protection. Accordingly, the lower courts correctly granted summary judgment in favor of the Louisiana Insurance Guaranty Association, dismissing plaintiffs' claims against it.

LIABILITY OF ANGELINA
Defendant Angelina Casualty Company issued excess coverage for Bruce Boats on the Standard Workers' Compensation and Employers' Liability policy only. Because we have held that the workers' compensation policy was not in effect, Angelina can have no liability. Summary judgment in favor of Angelina was properly granted by the lower courts.

LIABILITY OF GREYSHIP
It is uncontested that a valid bareboat charter existed between Greyship Corporation, the title owner of the M/V Patricia Bruce, and Bruce Boat Rentals, Inc. The great weight of federal jurisprudence refuses to hold the owner responsible for transitory unseaworthy conditions arising during the existence of the charter when there is a valid bareboat charter. See, e.g., Guzman v. Pichirilo, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); Brophy v. Lavigne, 801 F.2d 521 (1st Cir.1986). The plaintiffs urge this court to adopt instead the reasoning of the United States Fifth Circuit in Baker v. Raymond International, Inc., 656 F.2d 173, 184 (5th Cir.1981), cert. denied, 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982), in which Judge Rubin held that "a seaman may have recourse in personam against the owner of an unseaworthy vessel, without regard to whether owner or bareboat charterer is responsible for the vessel's condition." Since an owner who had no knowledge of the unseaworthy condition could limit liability to the value of the vessel, Judge Rubin reasoned that it was no longer reasonable to require seamen to attach the vessel in order to secure recompense for injuries suffered.
The Baker rationale is contrary to the great weight of federal case law, and we decline to follow it here for the reasons expressed by the appellate court below. Backhus v. Transit Casualty Co., supra 532 So.2d at 448-50. The lower courts correctly granted summary judgment in favor of Greyship.

DECREE
For the foregoing reasons, the decisions of the court of appeal granting summary judgment in favor of defendants Angelina Casualty Company, Greyship Corporation, *293 and the Louisiana Insurance Guaranty Association are affirmed. Plaintiffs' claims against these defendants are dismissed at plaintiffs' costs.
LEMMON, J., dissents.
CALOGERO and WATSON, JJ., dissent and assign reasons.
CALOGERO, Justice, dissenting.
The majority concludes that the Louisiana Insurance Guaranty Association (LIGA) is not liable to a claimant who is unable to collect from an insolvent insurer under a marine protection and indemnity policy. The majority reasons that LIGA's statutory exemption from claims made under ocean marine insurance policies applies equally to claims made under marine protection and indemnity policies. To reach this result, the majority defines marine protection and indemnity insurance as a type of ocean marine insurance.
I disagree. As this Court recognized last term in Deshotels v. SHRM Catering Services, 538 So.2d 988, 990, 992 (La.1989), the Louisiana Insurance Code does not define "ocean marine" insurance. On numerous occasions, this omission has forced the courts to consider LIGA's liability for claims when either the claim or the policy possessed a marine element. See Deshotels, 538 So.2d at 990-92 and the cases cited therein. The legislature could eliminate this recurring difficulty by defining the parameters of "ocean marine insurance" and LIGA's corresponding exemption.[1]
In the absence of a statutory definition of ocean marine insurance, I would employ the definition of ocean, or "wet," marine insurance used by other jurisdictions.[2] The insurance codes of Delaware, Florida and Maryland define wet marine insurance independently of marine insurance. See Del. Code Ann. tit. 18 § 907 (1975); Fla.Stat. tit. 37 § 624.607 (1987); Md.Code Ann. art. 48A § 70 (1986). In defining "marine insurance," these codes use language paralleling that found in the Louisiana statute. Compare, e.g., Del.Code Ann. tit. 18 sec. 907 (1975) with La.R.S. 22:6(13)(a)-(e). However, where these codes carve out a more narrow definition for "wet" marine insurance, the Louisiana code is silent. In the Delaware code, for example, "`wet marine and transportation' insurance is that part of `marine and transportation' insurance which includes only" four types of property rights and interests related to marine transportation. Thus, the Delaware code contrasts the limited scope of wet marine insurance with the broader scope of "marine and transportation" insurance generally.
In deciding the instant case, this court should use a definition of ocean marine insurance modeled after the narrowly drawn definition of wet marine insurance found in the Delaware, Florida and Maryland codes. Under this approach, LIGA's liability would exclude claims asserted under ocean marine indemnity policies but would include claims asserted under personal injury liability provisions of other marine policies. As noted in the majority opinion, "such an interpretation would support the purpose of the Louisiana Insurance Guaranty Association and would be in keeping with its spirit." Majority opinion at 290.
For these reasons I dissent.
WATSON, Justice, dissenting.
The majority's decision creates an anomalous situation in which LIGA covers maintenance and cure owed by an insolvent *294 insurer under a workers' compensation policy with a marine endorsement but is not responsible for maintenance and cure owed by an insolvent protection and indemnity insurer. The problem can only be resolved by distinguishing between ocean marine property insurance on hulls, freights and cargoes and marine insurance against liability for death or personal injury. "An insurance policy which insures an employer against liability to employees is not a policy of `ocean marine' insurance merely because it embraces some maritime risks." Deshotels v. SHRM Catering Services, Inc., 538 So.2d 988,993 (La.1989).
I respectfully dissent from the reasoning and the discriminatory result reached by the majority.
NOTES
[1] In a affidavit submitted by the plaintiffs, Transit insurance agent Mr. H.S. Hover, Jr., confirmed that the primary coverage for the Mrs. Backhus' maintenance and cure claim was under the protection and indemnity policy:

"I hereby further attest that it was our intention that Jones' Act wages, maintenance and cure coverage, be afforded to Bruce by Transit in two (2) layers, first through the P & I policy, and secondly through the Workmen's Comp. Policy; that Amendments to Coverage B Endorsement Maritime of the Workmen's Comp. Policy were intended to provide the second layer of insurance under Maritime risk to Bruce by providing that, if there was no P & I policy then in force, then coverage would be provided to Bruce for Jones' act and seaman's claims, including wages, maintenance and cure, under the Workmen's Comp. Policy and, further, by Transit being an admitted company, if no insurance was then available to Bruce because of the insolvency of Transit under the Workmen's Comp. Policy, then there would be insurance provided to Bruce under the provisions of the LIGA."
[2] Because the right to maintenance and cure attaches even without the owner's being negligent or the vessel's being unseaworthy, one commentator has characterized maintenance and cure as "a form of judge-created worker's compensation." 2 A. Parks, The Law and Practice of Marine Insurance and Average 846 (1987).
[3] 1970 La. Acts, No. 81, sec. 1.
[4] The Model Act speaks of the "purpose of this Act," while section 1376 is phrased in terms of the "purpose of this Part." This is the only difference between the statement of purpose contained in the Model Act and that found in the Louisiana Insurance Guaranty Law.
[5] The legislature's exception of "ocean or wet" marine insurance from rate regulation, R.S. 22:1403(C), is consistent with the specialize nature of marine insurance. Relevant differences noted by one commentator between ocean marine insurance and other types of property and liability insurance include the following:

"1. Ocean marine insurance has a stronger international orientation than most other lines.
2. Like most lines ocean marine insurance includes both commercial and noncommercial insurance, but commercial markets are relatively much more important in ocean marine insurance than in the other lines....
7. Ocean marine protection and indemnity policies cover several sources of liability such as liability for injuries to certain employees (crew members) not usually covered under liability insurance policies.
8. Marine insurance rates are much more heavily based on judgment than the rates for most other types of insurance. Both ratemaking and rate regulation differ because of this characteristic.
9. Unlike most other property and liability insurance contracts, ocean marine insurance policies usually need not be filed with state insurance departments. Furthermore, though some voluntary standardization exists, ocean marine insurance contracts are not standardized by law." 1 A. Brunck, V. Simone, C. Williams, Ocean Marine Insurance 33-34 (1988).
[6] Language in our recent Deshotels opinion suggesting that Louisiana Insurance Guaranty Association protection extends to insurance for the benefit and protection of employees, regardless of the type of claim or the type of policy, does not constitute the holding of that case.
[1] The Insurance Code's definition of marine insurance, La.R.S. 22:6(13)(a)-(e), adopted in Acts 1948, No. 195 sec. 1.06, predates the Code's use of the term "ocean marine" insurance in the statute creating LIGA, Acts 1970, No. 81 sec. 1, codified as amended at La.R.S. 22:1375-94. The ocean marine exclusion was not defined when Louisiana adopted the LIGA statute nor thereafter.
[2] The majority opinion uses the terms "wet" and "ocean" marine insurance interchangeably. See majority opinion at 288. Moreover, the majority opinion treats the definitions of "wet" insurance, contained in the codes of other states, as equivalent to definitions of "ocean" marine insurance. See majority opinion at 291 and statutory material from Delaware, Florida and Maryland cited herein.