**CAUSEWAY MEDICAL SUITE, and Hope Medical Group for Women, On behalf Of themselves and the patients they serve.**

v.

**Richard IEYOUB, Attorney General of the State of Louisiana; Edwin Edwards, Governor of the State of Louisiana; Rose Forrest, Secretary of the Louisiana Department . of Health and Hospitals; and Gloria Bryant Banks, Secretary of the Louisiana Department of Social Services, in their official capacities and their successors.**

Civ. A. No. 95–2164.

United States District Court,
E.D. Louisiana.

Oct. 24, 1995.

William E. Rittenberg, New Orleans, LA, Eve C. Gartner, New York City, for Causeway Medical Suite, Hope Medical Group for Women.

Roy A. Mongrue, Jr., Thomas Scherer Halligan, Louisiana Dept. of Justice, Baton Rouge, LA, for Richard Ieyoub, Edwin Edwards, Rose–Forrest, Gloria Bryant Banks.

Jane L. Johnson, New Orleans, LA, Robin Elise Schulberg, Tulane Law School, New Orleans, LA, for American Civil Liberties Union Foundation of Louisiana.

Dorinda Chiappetta Bordlee, Dorinda Bordlee, Metairie, LA, for Louisiana Lawyers for Life.

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

LIVAUDAIS, District Judge.

Before the court are cross motions for summary judgment submitted by both parties. Plaintiffs, Causeway Medical Suite and Hope Medical Group for Women, move for summary judgment under 42 U.S.C. § 1983, seeking to permanently enjoin enforcement of LSA–R.S. 40:1299.35.5, as amended and re-enacted by House Bill 2458 (Act 1254) of the 1995 Louisiana legislative session. Defendants, Louisiana Attorney General Richard Ieyoub, Louisiana Governor Edwin Edwards, Louisiana Secretary of Health and Hospitals Rose Forrest, and Louisiana Secretary of Social Services Gloria Bryant Banks, oppose the plaintiffs' motion and move for summary judgment dismissing the claim. Two briefs were also filed *Amicus Curiae*. In support of the plaintiffs' motion, the American Civil Liberties Union Foundation of Louisiana filed an Amicus brief. Louisiana Lawyers for Life filed a brief in support of the defendants. For the following reasons, the plaintiffs' motion for summary judgment is granted and the enforcement of LSA R.S. 40:1299.35.5, as amended and re-enacted by Act 1254 (House Bill 2358) of the 1995 Legislative session, is permanently enjoined. The defendants' motion is denied for the same reasons.

### FACTS

LSA–R.S. 40:1299.35.5 is a Louisiana statute that regulates the circumstances under which a woman under the age of 18 can obtain an abortion in the State of Louisiana. Under LSA–R.S. 40:1299.35.5, a physician is prohibited from performing an abortion on a minor without either the consent of one parent or guardian, or an order from a juvenile court judge allowing the abortion. The process for obtaining a court order in lieu of parental consent is called a judicial bypass.

The instant dispute centers on the 1995 amendments to the judicial bypass provision. Prior to the 1995 amendments, the judicial bypass provision stated:

(4) If the court finds that the minor is sufficiently mature and well enough informed to make the decision concerning the abortion on her own, the court *shall* issue an order authorizing the minor to act on the matter without parental consultation or consent.

(5) If the court finds that the minor is not competent to make the decision concerning the abortion on her own, but finds that the abortion nevertheless would be in the best

interest of the minor, the court *shall* issue an order authorizing the abortion.

LSA–R.S. 40:1299.35.5(A) and (B)(4)–(5) (1994) (emphasis added).

The judicial bypass provision of LSA–R.S. 40:1299.35.5 ("the Louisiana parental consent law") had been in effect as written above for more than ten years. The prior version of the Louisiana parental consent law was upheld by this Court in the case of *Margaret S. v. Treen*, 597 F.Supp. 636, 650–52 (E.D.La. 1984), *affirmed on other grounds sub. nom. Margaret S. v. Edwards*, 794 F.2d 994 (5th Cir.1986).

The 1995 amendments to the Louisiana parental consent law change the judicial bypass provision so that it reads as follows:

(4) If the court finds, by clear and convincing evidence, that the minor is sufficiently mature and well enough informed to make the decision concerning the abortion on her own, the court *may* issue an order authorizing the minor to act on the matter. Prior to any such order, the court may require the minor to participate in an evaluation and counseling session with a mental health professional from the Department of Health and Hospitals, office of mental health, and a staff member from the Department of Social Services, office of community services. The court may refer the petitioner, if necessary, to the appropriate Department of Health and Hospitals, office of mental health regional office to arrange the evaluation and counseling session within forty-eight hours of the ex parte hearing, excluding legal holidays.

(5) If the court finds that the minor is not sufficiently mature and well enough informed to make a decision intelligently among the alternatives, the court *shall* decide whether or not it would be in the best interest of the minor to notify her parents or guardian of the proceedings. If the court finds that it is in the minor's best interest to notify her parents or guardian, the court *shall* so notify and reconvene the proceedings within forty-eight hours with the parents or guardian present to advise and counsel the minor and aid the court in making its determination whether or not the abortion would be in the best interest of the minor.

(6) If the court finds that the minor is not competent to make the decision concerning the abortion or that it would not be in the minor's best interest to notify her parents or guardian, the court *may* issue an order authorizing the abortion if the court finds, by clear and convincing evidence, that the abortion would be in the best interest of the minor.

LSA–R.S. 40:1299.35.5(B)(4)–(6), 1995 La. Sess.Law.Serv. Act 1254 (H.B. 2458) (West) (emphasis added).

This court issued a preliminary injunction to the enforcement of LSA–R.S. 40:1299.35.5, as amended by Act 1254 of the 1995 legislative session, on August 11, 1995. Following that decision, the parties requested a clarification as to the status of the law following the preliminary injunction. On August 14, 1995, this court issued an Addendum to its prior ruling stating that the preliminary injunction had the effect of maintaining the status of LSA R.S. 40:1299.35.5 as it existed prior to the 1995 legislative session. Plaintiff moved for reconsideration of that ruling, but has now withdrawn that motion.

*DISCUSSION:*

### I.

Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In opposing a properly supported motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [its] pleadings, but the [non-moving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In determining the existence of a genuine issue for

trial, a court must view the evidence in the light most favorable to the non-movant, and any reasonable doubt as to the existence of a genuine issue must be resolved in favor of the nonmoving party.

As the present case is a facial challenge to the constitutionality of a legislative act, by definition no factual questions as to the application of the law are in dispute. In fact, the only factual dispute involves the standing of the plaintiffs to bring this action. However, it is clear from the recent decisions of the Supreme Court that providers of abortion services do have standing to assert the claims relative to the right of their patients to choose to have an abortion. *Planned Parenthood v. Casey*, 505 U.S. 833, 843–44, 112 S.Ct. 2791, 2803, 120 L.Ed.2d 674 (1992).[1] Both the plaintiffs have established by credible evidence that they are providers of abortion services and that a sizable percentage of their patrons are minors. As a result of the lack of factual controversy, subject to the standing issue discussed above, this court has limited its consideration to only legal issues.

## II.

■ In a challenge to the facial constitutionality of a legislative act, the plaintiffs must establish that no set of circumstances exists under which the act would be valid.

*Barnes v. Moore*, 970 F.2d 12, 14 (5th Cir. 1992) (Citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)).[2] While this is an extremely difficult standard to meet, in the present case, the 1995 amendment to LSA–R.S. 40:1299.35.5 clearly violates the constitutional protections and rights of all minors seeking judicial bypass of the parental consent requirement to obtain an abortion as established by the Supreme Court in *Bellotti II* (*Infra*) and most recently affirmed in *Casey* (*Infra*).

In *Casey*, the Supreme Court stated that "[w]e have been over most of this ground before. Our cases establish, and we reaffirm today, that a State may require a minor seeking an abortion to obtain the consent of a parent or guardian, provided that there is an adequate judicial bypass procedure." *Id.* 505 U.S. at 899, 112 S.Ct. at 2832. (Citing *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (hereafter *Akron II* ) and *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (hereafter *Bellotti II* ).

■ A judicial bypass procedure in a parental consent statute must satisfy four criteria. *Akron II*, 497 U.S. at 511, 110 S.Ct. at 2979 ("The principal opinion in *Bellotti* stated four criteria that a bypass procedure ...

1. Defendants also claim that this court lacks jurisdiction to hear this case as a "collateral attack on state court procedures, valid on their face, aimed a private cases." (Defendants Motion for Summary Judgment, p. 30). Clearly this court does have jurisdiction pursuant to 28 U.S.C.A. § 1343 as this suit seeks to redress the deprivation, under color of state law, of a right secured by the Constitution of the United States.

2. Presently the Federal Circuit Courts are split on the issue of whether this standard was changed by the Supreme Court in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). In *Casey*, the majority appeared to have found that an abortion law is unconstitutional on its face if in a large fraction of the cases in which the law is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion. *Id.* at 895, 112 S.Ct. at 2830. In fact, Justice O'Connor, the author of the *Casey* decision, has subsequently written that the case "made clear that a law restricting abortions constitutes an undue burden, and hence is invalid, if in a large fraction of cases in which it is relevant

it will operate as a substantial obstacle to a woman's choice ..." *Fargo Women's Health Org. v. Schafer*, 507 U.S. 1013, ——, 113 S.Ct. 1668, 1669, 123 L.Ed.2d 285 (1993) (Concurring Opinion). This new standard has been accepted by several circuits, including the Third, Eighth and Ninth Circuits. See *Casey v. Planned Parenthood*, 14 F.3d 848, 863 n. 21 (3rd Cir.1994) (on remand); *Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1457 (8th Cir.1995); and, *Compassion in Dying v. Washington*, 49 F.3d 586, 590 (9th Cir.1994).

However, the Fifth Circuit has refused to accept that the longstanding Supreme Court precedent governing challenges to the facial constitutionality of statutes was changed, *sub silentio*, in *Casey*. *Barnes v. Moore*, 970 F.2d 12, 14 n. 2 (5th Cir.1992). As such, the Fifth Circuit continues to apply the strict *Salerno* standard.

In the present case, this distinction makes little difference as the Louisiana Statute at issue is defective under either standard. As such, this Court offers no view as to which is the appropriate standard.

must satisfy."). First, the *Bellotti* decision requires that the bypass procedure allow a minor to demonstrate that she is sufficiently mature and informed to make the abortion decision, in consultation with her physician. *Bellotti II,* 443 U.S. at 643, 99 S.Ct. at 3048. Second, *Bellotti* requires that even if the minor cannot make the abortion decision by herself, the court must authorize the minor's consent to the abortion if the court determines "the desired abortion would be in her best interests." *Id.* at 645, 99 S.Ct. at 3049; *Akron II,* 497 U.S. at 511, 110 S.Ct. at 2979.

Third, *Bellotti* requires that the bypass procedure preserve the minor's anonymity. *Bellotti II,* 443 U.S. at 643, 99 S.Ct. at 3049; *Akron II,* 497 U.S. at 511, 110 S.Ct. at 2979 (upholding Ohio statute as sufficient for preserving minor's anonymity where statute prohibited juvenile court from notifying parents or guardian that minor was pregnant or wanted an abortion).

Fourth, *Bellotti* requires that the courts conduct the bypass procedure with expedition "to allow an effective opportunity to obtain the abortion." *Akron II,* 497 U.S. at 512, 110 S.Ct. at 2980, *citing Bellotti II,* 443 U.S. at 644, 99 S.Ct. at 3049.

The revisions of LSA–R.S. 1299.35.5(B) contained in Act 1254 directly conflict with the *Bellotti II* standards in several respects:

First, the Amendment to Section B(4), by substituting "may" for "shall", has the effect of conferring upon the juvenile court judge the discretion to deny a judicial bypass to a minor who had shown herself to be sufficiently mature and informed to make an intelligent decision on the merits of obtaining an abortion.

The Supreme Court has specifically prescribed the scope of inquiry allowed by the Constitution in the determination of whether a minor should be able to have access to an abortion without parental consent. *See, Bellotti II,* at 644, 99 S.Ct. at 3050. While the court left open the exact factors to be used in the determination of the minor's maturity, it specifically stated that "[i]f she satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court *MUST* autho-

rize her to act without parental consultation or consent." *Id.* at 644, 99 S.Ct. at 3050. (emphasis added) This clearly establishes the substantive standard and requirements of a judicial bypass.

The Fifth Circuit has specifically ruled on this issue in *Scheinberg v. Smith,* 659 F.2d 476, 481 (5th Cir.1981), *overruled on other grounds Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). In *Scheinberg,* a Florida statute was struck down for vesting in the state courts the same discretion granted by Act 1254 to ignore a minor's maturity in determining whether to authorize an abortion. The statute was found to be contrary to the standards set out in *Bellotti II* in that it permitted judicial authorization for an abortion to be withheld from a minor who is found by the court to be mature enough to make the decision independently. *Id.* at 480, citing *Bellotti II,* 443 U.S. at 645, 99 S.Ct. at 3052.

■ The defendants maintain that this change in statutory language from "shall" to "may" did not grant this discretion but merely provided the procedural means needed for the state judges to apply the federal substantive principles. (Defendants' Brief pg. 10–11). However, as the defendants themselves state, courts must interpret statutory language in ways to effect the purpose for which it was enacted. (Def.Brf. at 10.) As one of the main changes in the Act is to replace "shall" with "may", the legislature must have intended this to effectuate some change in the law. In *Backhus v. Transit Cas. Co.,* 549 So.2d 283, 289 (La.1989), a case cited by the defendants, the Louisiana Supreme Court stated that, under the Louisiana Code, a court must give words of a law their generally prevailing meaning. *Id.* at 289. In the present case, the generally prevailing meaning of "may" is a grant of discretion, while the generally prevailing meaning of "shall" is a mandate to act. As such, the clear intent of the statutory amendment was to grant the substantive power of discretion to the judges of this state that is directly contrary to the rulings of the Supreme Court in *Casey, Akron II* and *Bellotti II.* As the court stated in *Bellotti II,* "[w]e are concerned here with the exercise of a constitutional right of unique

character. . . . [I]f the minor satisfied a court that she has attained sufficient maturity to make a fully informed decision, she then is entitled to make her abortion decision independently." *Bellotti II,* 443 U.S. at 645, 99 S.Ct. at 3052.[3]

Secondly, the provisions of Act 1254 amend Section B(4) of the Act to require that the juvenile court hear the bypass application within 48 hours, without any requirement as to when the application must be ruled upon. This is clearly contrary to the requirement from *Bellotti II* of an expeditious determination of the application sufficient to allow an effective opportunity to obtain the abortion. *Bellotti II,* at 644, 99 S.Ct. at 3049. While the Supreme Court has upheld statutes that require up to 22–days, even in worst case scenarios, for a decision on the application, in the present case there is no maximum allowed time period for rendering the decision on the application. See *Akron II,* 497 U.S. 502, 513, 110 S.Ct. 2972, 2980, 111 L.Ed.2d 405 (1990).

Defendants argue that, under the Louisiana Code of Civil Procedure, the statute is not constitutionally insufficient as the courts are required to conduct these proceedings as "summary proceedings". However, as the defendant admits, La.C.C.P. Article 2595 only requires that in summary proceedings the court "render its decision as soon as *practicable* after the conclusion of the trial and, whenever *practicable,* without taking the matter under advisement." (emphasis added) This vague timeframe is insufficient to protect the rights of the minor, especially considering the time sensitive nature of the availability of an abortion. As the Ninth Circuit held in *Glick v. McKay,* 937 F.2d 434, 440–441 n. 4 (9th Cir.1991), "[w]hile a seventeen or twenty-two day bypass procedure period satisfies the *Bellotti* requirement that the courts must conduct a bypass procedure with expediency to allow the minor an effective opportunity to obtain an abortion, an

indefinite period does not." (Citing *Akron II,* 497 U.S. at 513, 110 S.Ct. at 2980; *Bellotti II,* 443 U.S. at 643, 99 S.Ct. at 3048.)

Further, under Section B(4), the court may require the minor to participate in an evaluation and counseling session with a mental health professional from one or more of several state agencies prior to any order authorizing the bypass. Again, there is a 48 hour period to order the evaluation, but no timeframe is given for its completion. Considering the often glacial pace of agency decision making, this constitutes a manifest threat and undue burden to the availability of the judicial bypass to mature minors.

As stated above, the provisions of the judicial bypass must assure that the decision of the court to grant or deny the application must be completed with expedition to allow an effective opportunity to obtain the abortion. *Akron II,* 497 U.S. at 513, 110 S.Ct. at 2980, *citing Bellotti II,* 443 U.S. at 644, 99 S.Ct. at 3049. In a situation where time is of the essence, these vague and open-ended directives are insufficient to protect the minor's right to a timely resolution on her judicial bypass application. Act 1254 does not meet the minimum requirement of expedition as no maximum period is given in which the court must approve or deny an application for judicial bypass, therefore in each and every application by a pregnant minor for a judicial bypass authorization, there is no assurance under the Act that the decision will be made expeditiously.

Finally, Act 1254 disregards yet another of the *Bellotti* mandates by requiring that the juvenile court notify the parents of immature minors who have applied for judicial bypass if it is determined to be in the best interest of the minor to do so. LSA–R.S. 40:1299.35.5(B)(5) (as amended by Act 1254). In *Bellotti II,* the court did state that there is a substantial state interest in encouraging parental involvement, however it specifically denied the courts the ability to breach the

---

**3.** The Act also amended LSA–R.S. 40:1299.35.5 by adding Sec. B(6). This amendment suffers from the same deficiency as B(4) of granting the state juvenile court judge discretion to deny a judicial bypass authorization to an immature minor who has adequately demonstrated that the abortion would be in her best interest. This

provision is also contrary to the established Supreme Court precedent. See *Bellotti II,* 443 U.S. at 644, 99 S.Ct. at 3050 ("If the court is satisfied that [an abortion is in her best interest] the court *must* authorize the abortion.") (emphasis added)

anonymity of the minors bypass application. *Bellotti II,* 443 U.S. at 644–45, 99 S.Ct. at 3050–3051. The Court limited the role of the state juvenile courts, even when notification would be in the best interest of the minor, to deferring decision until after parental consultation, specifically stating that "this is the full extent to which parental involvement may be required." *Id.* at 645, 99 S.Ct. at 3051. Thus, while the juvenile court may deny the application if it determines that parental notification would be in the best interest of an immature minor, it may not take any action to notify the parents itself. *Id.*

In this light, the requirement of Act 1254 that "if the court finds that it is in the minor's best interest to notify her parent or guardian, the court *shall* so notify and reconvene the proceeding within 48 hours ..." LSA–R.S. 40:1299.35.5(B)(5) (as amended by Act 1254) directly violates the right to anonymity of the minor in making the judicial bypass application. Not only are the courts of Louisiana authorized to notify the parents under the Act, they are required to do so. This clearly violates the right established in *Bellotti II,* as upheld in *Akron II* and *Casey,* of a minor to an anonymous application for judicial bypass.

In sum, the provisions of LSA R.S. 40:1299.35.5(B)(4)–(6) (as amended by Act 1254) violate all four of the requirements for a judicial bypass provision established by the Supreme Court in *Bellotti II,* 443 U.S. at 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) and subsequently upheld in a litany of cases including *Akron II,* 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) and, most recently, *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). As such, Act 1254 constitutes an undue burden on the right of minors to have access to abortion services by way of a judicial bypass of the parental consent requirement and thus violates the Due Process clause of the Fourteenth Amendment.

### III.

■ To be entitled to a permanent injunction for a constitutional violation, a plaintiff must show (1) that there has been such a violation, (2) the existence of continuing ir-

reparable injury if the injunction does not issue, and (3) the lack of an adequate remedy at law. *Dye v. McKeithen,* 856 F.Supp. 303, 305 (W.D.La.1994) citing *Newman v. State of Alabama,* 683 F.2d 1312, 1319 (11th Cir. 1982), *cert. den.,* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). For the reasons stated above, this Court finds that the amendments to LSA–R.S. 40:1299.35.5 contained in Act 1254 (H.B. 2458) are facially unconstitutional under the Supreme Court's interpretation of the 14th Amendment in *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), as affirmed in *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Further, this Court finds that the plaintiffs have proven continuing irreparable injury if the injunction does not issue, and under the facts of the case the plaintiffs have no other adequate remedy at law aside from institution this suit pursuant to 42 U.S.C.A. § 1983. Thus this Court finds that the permanent injunction herein requested by plaintiffs would prevent irreparable injury to those represented by the plaintiffs, not unduly damage the defendants, and be in the best interest of the public.

Accordingly,

IT IS HEREBY ORDERED that the motion for summary judgment of the plaintiffs, Causeway Medical Suite and Hope Medical Group for Women, is hereby GRANTED.

IT IS FURTHER ORDERED that the motion for summary judgment of the defendants is hereby DENIED.

### JUDGMENT

Considering the record, the ruling on the motions for summary judgment entered this date, the law and for the reasons assigned,

**IT IS ORDERED, ADJUDGED AND DECREED** that the August 11, 1995 Order of the Court and the August 14, 1995 Addendum thereto be **RECALLED** and **VACATED,** and

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that there be judgment herein in favor of the plaintiffs, Causeway Medical Suite and Hope Medical Group for Women, and against defendants,

Richard Ieyoub, Edwin Edwards, Rose Forrest, and Gloria Bryant Banks, **PERMANENTLY ENJOINING** the enforcement of House Bill 2458 (Act 1254) of the 1995 Louisiana legislative session as it purports to amend LSA–R.S. 40:1299.35.5.