United States Court of Appeals,

Fifth Circuit.

No. 91–3220.

Jonathan P. GRUBBS, Plaintiff–Appellant,

v.

GULF INTERNATIONAL MARINE, INC., et al., Defendants–Appellees.

Oct. 19, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before KING, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Jonathan P. Grubbs appeals the judgment of the district court dismissing his Jones Act/general maritime law action against his employer Gulf International Marine, Inc. (Gulf) and its insurer American Steamship Owners' Mutual Protection and Indemnity Association, Inc. (American Steamship). The district court concluded that because American Steamship's policy was not delivered in Louisiana, the Louisiana Direct Action Statute did not apply. Based on this conclusion, the district court dismissed Grubb's action against American Steamship. The district court also dismissed Grubbs' claim against Gulf because the corporate entity has been dissolved. We affirm the district court's dismissal of American Steamship but for reasons different than those relied on by the district court. However, we reverse the dismissal of Gulf.

I.

Jonathan Grubbs was injured in 1986 while employed as an engineer on the tug, the M/V THOMAS HERBERT. Grubbs' accident and injury occurred while the tug was in Texas territorial waters. Gulf, a Houma, Louisiana based entity, was insured under a marine protection and indemnity (P & I) policy issued by American Steamship. American Steamship has its sole U.S. office in New York, New York. It delivered the policy to Gulf's broker, Seahawk International, Inc. (Seahawk), at Seahawk's New York office. The principals of Gulf repeatedly asked American Steamship and

Seahawk for a copy of the policy, but neither complied with these requests. American Steamship and Seahawk did furnish certificates of insurance to Gulf's customers upon Gulf's request.

Grubbs filed suit against Gulf and American Steamship in December 1986 to recover for his injuries. American Steamship filed a motion for summary judgment on a number of grounds. It argued primarily that it was not amenable to suit under the Louisiana Direct Action Statute because the accident occurred outside Louisiana and the policy was neither written nor delivered in Louisiana. It also argued that it committed no independent tort of failure to pay maintenance and cure because, under Gulf's protection and indemnity policy, it was only obligated to pay if Gulf first paid maintenance and cure and sought reimbursement. According to American Steamship, Gulf never did so. American Steamship argued alternatively that the Direct Action Statute does not apply because the marine protection and indemnity policy it issued to Gulf is an "ocean marine" insurance policy that is excepted from the provisions of the Direct Action Statute.

Grubbs argued to the district court that a material issue of fact was presented on whether the policy had been constructively delivered to Gulf in Houma, Louisiana. He also argued that American Steamship's failure to deliver the policy in Louisiana, as requested, was for the purpose of avoiding the Direct Action Statute and that such conduct should not be allowed to defeat the application of the statute.

The district court granted American Steamship's motion for summary judgment. The defendants later informed the court that Gulf's corporate charter had been dissolved upon the completion of its bankruptcy proceedings and that Gulf was no longer in existence. The court then dismissed the action against the remaining defendant, Gulf. In this appeal, Grubbs argues that he is entitled to sue American Steamship under the Louisiana Direct Action statute. He also contends that his action against Gulf did not abate upon Gulf's dissolution. We consider both of these arguments below.

II.

The Louisiana Direct Action statute permits an action directly against an insurer of a tort-feasor if the plaintiff can establish one of the following:

      (1) the accident occurred in Louisiana;

      (2) the policy was written in Louisiana;  or

      (3) the policy was delivered in Louisiana.

LSA–R.S. 22:655[1];  *Webb v. Zurich Insurance Co.,* 251 La. 558, 205 So.2d 398 (1967);  *Signal Oil & Gas Co. v. The Barge W–701,* 654 F.2d 1164 (5th Cir.1981);  *Landry v. Travelers Indemnity Co.,* 890 F.2d 770 (5th Cir.1989).  The district court dismissed Grubbs' action against American Steamship on the grounds that the policy at issue was not delivered in Louisiana and that Grubbs presented no other basis for a direct action against American Steamship.

American Steamship argued alternatively both to the district court and to us that even if the policy were delivered in Louisiana, the Louisiana Direct Action Statute had no application to Grubbs' claim against its P & I insurer.  For reasons that follow, we agree with this argument and rest our decision solely on this ground.

The Louisiana Direct Action Statute is codified in Part XIV of the Insurance Code. LSA–R.S. 22:655.  Section 611(A) of Part XIV states that "The applicable provisions of this Part shall apply to insurance other than ocean marine and foreign trade insurances."  American argues that the marine P & I policy it issued to Gulf is an "ocean marine" policy which is excluded from the application of Louisiana's Direct Action Statute.

---

[1]LSA–R.S. 22:655 provides in pertinent part:

> This right of action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana.

For decades, the federal courts have assumed that the Louisiana Direct Action Statute permitted an injured person to sue a P & I insurer directly. *See Cushing v. Maryland Cas. Co.,* 198 F.2d 536 (5th Cir.1952), modified on other grounds, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954), and *Crown Zellerbach Corp. v. Ingram Industries, Inc.,* 783 F.2d 1296 (5th Cir.1986) (en banc), cert. denied, 479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986). Although P & I insurers were sued directly under the Louisiana Direct Action Statute in both Cushing and Crown Zellerbach, neither decision dealt directly with, and in fact did not discuss, the ocean marine exclusion.

Two recent opinions of the Louisiana Supreme Court, which is entitled to the final word on the meaning of a Louisiana statute, require us to confront this issue. In both cases the Louisiana high court was asked whether certain types of insurance policies provided ocean marine coverage for purposes of the Louisiana Insurance Guaranty Association Fund (LIGA).[2] LIGA, like the direct action statute, excludes ocean marine insurance from its application. LSA–R.S. 22:1377 states that LIGA covers "all kinds of direct insurance, *except* life, health and accident, title, disability, mortgage guaranty, and *ocean marine insurance.*" (emphasis added).

First, in *Deshotels v. SHRM Catering Services, Inc.,* 538 So.2d 988 (La.1989), the court answered a certified question from this court. We asked whether a workmen's compensation policy with a maritime endorsement is ocean marine insurance for purposes of this exclusion. The court answered no. It reasoned that "LSA–R.S. 22:1377 states that Guaranty Association insurance applies "to all kinds of direct insurance, except life, health and accident, title, disability, mortgage guaranty, and ocean marine insurance.' These categories enumerate different kinds of insurance policies, rather than different risks." *Id.* at 993. The court, relying on marine insurance treatises and the statutory definitions, considered a marine policy one that has as its central objective insuring against " "marine losses, that is to say, losses incident to a marine adventure.' " *Id.* at 992, *citing* Parks, The Law and

---

[2]LIGA is a statutorily created fund designed to pay claims against certain insolvent insurers. LSA–R.S. 22:1375–1394.

Practice of Marine Insurance and Average, Vol. 1, p. 19 (Cornell Maritime Press, 1987). It concluded that "[a]n insurance policy which insures an employer against liability to employees is not a policy of "ocean marine' insurance merely because it embraces some maritime risks." *Id.*

In *Backhus v. Transit Cas. Co.,* 549 So.2d 283 (La.1989), the court concluded, however, that marine protection and indemnity insurance is ocean marine insurance for purposes of LIGA. The reasoning of the *Backhus* court is important and we outline it below in some detail. It first looked to the statutory definitions contained in the Insurance Code. LSA–R.S. 22:6(13), defines "marine and transportation (inland marine) insurance", by listing five categories of coverage. *Id.* at 287. The fifth category of marine and transportation insurance listed by the statute is "marine protection and indemnity type insurance" which the statute defines as follows:

> [I]nsurance against, or against legal liability of the insured for, loss, damage, or expense incident to ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, *including liability of the insured for personal injury, illness or death* or for loss of or damage to the property *of another person.*

*Id.* at 288; LSA–R.S. 22:6(13)(e) (emphasis added).

The court then considered commercial literature on marine insurance and noted that the definition in the statute was consistent with the commercial usage of the term "marine insurance." The Court observed that marine insurance encompasses a broad category of insurance coverages against risks associated with both maritime and nonmaritime transportation. The commercial meaning associated with "ocean" or "wet" marine insurance covers these risks "associated with the perils encountered by the maritime industry." *Backhus,* 549 So.2d at 288; *citing* 1 A. Brunck, V. Simone, C. Williams, Ocean Marine Insurance 1–4 (1988).

Relying on insurance treatises, the Court noted that ocean marine insurance encompasses coverage for the shipowners' property as well as its liability. "The property aspect of marine

insurance comprises hull insurance and cargo insurance, while the liability insurance consists of collision liability insurance ..., protection and indemnity insurance, and other miscellaneous liability insurance." *Backhus,* 549 So.2d at 288, *citing* Brunck. Modern protection and indemnity policies cover many different risks, including the risk of death or personal injury to persons not covered under state or federal compensation plans and maintenance and cure obligations of the vessel owner. *Id. citing* Parks at 842. Based on the statutory definition of marine and transportation insurance, the commercial and industry meaning of the term "ocean marine," the court concluded that, "absent some intent on the part of the legislature to protect individuals entitled to recover under protection and indemnity policies," this insurance falls within the ocean marine exclusion exception to LIGA. *Backhus,* 549 So.2d at 289.

Our task in today's case is to determine whether marine P & I insurance falls within the ocean marine exclusion to the direct action statute. Grubbs argues first that the ocean marine exclusion in § 611 does not apply to the direct action statute. He points to Subsection D of § 655 which states that "It is also the intent of this Section that *all liability policies* within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs...." LSA–R.S. 22:655(D) (1992 Supp.) (emphasis added). Because of this broad inclusive phrase "all liability policies" in § 655, Grubbs contends the exclusionary language of § 611 does not apply. *See Tassin v. Hess Marine Transportation, Inc.,* No. 88–1938, 1990 WL 93831 (E.D.La.1990). We are not persuaded.

Both § 611 and the Direct Action Statute at § 655 are contained in Part XIV of the Louisiana Insurance Code which covers "The Insurance Contract." Also, the Direct Action Statute is not listed in Subsection B of § 611 as excepted from the exclusions in Subsection A.[3] Thus, Grubb's argument that the ocean marine insurance exclusion in § 611 does not apply to § 655 is not persuasive. In fact

---

[3]Subsection B provides only one exception from the exclusions in Subsection A. "The exceptions in Subsection A of this Section do not apply to R.S. 22:627. The only exceptions from the requirements of R.S. 22:627 are those specifically stated therein." LSA–R.S. 22:611(B).

the Louisiana Supreme Court has stated, although in dicta, that " "ocean marine' insurance ... is not only excluded from LIGA coverage but also from the scope of Part XIV which applies to "The Insurance Contract' and includes the Louisiana direct action statute." *Deshotels,* 538 So.2d 988.

If the ocean marine exclusion applies to the direct action statute, Grubbs argues that *Cushing* is still the controlling precedent. He argues that *Deshotels* and *Backhus* did not overrule *Cushing* and are irrelevant to the issues presented in this case because *Deshotels* and *Backhus* dealt only with interpretations of LIGA, not the direct action statute. He also argues that the history of the direct action statute demonstrates a strong legislative intent to extend the benefits of the Direct Action Statute to all injured persons including those entitled to recover under marine P & I policies.

Although at least one U.S. District Court agrees with Grubbs' argument,[4] we are not persuaded. First, we disagree that *Deshotels* and *Backhus* should not inform our analysis of this issue. In those cases the Louisiana courts were in a position analogous to our position today. The Louisiana courts were asked to interpret the scope of the term "ocean marine" insurance to determine whether the legislature intended to exclude certain protections afforded injured parties by the Louisiana Insurance Code. At the time those cases were decided, LIGA, like the direct action statute, did not define ocean marine insurance.

Available legislative history for the two acts is sparse. Both LIGA and the Direct Action Statute were enacted to help injured people recover for their injuries from the tortfeasor's insurer (Direct Action Statute) or the guarantee fund (LIGA). Thus if the tortfeasor is insolvent the direct action statute assures the injured party of a remedy against the tortfeasor's insurer. Similarly, if the insurer is insolvent, LIGA provides the injured party with a remedy against the guarantee fund. Both statutes exclude ocean marine insurance from the protections otherwise available. No explanation

---

[4]*Butler v. The Western Company of North America,* 1990 WL 93855, 1990 U.S.Dist. LEXIS 7884 (E.D.La.1990—Wicker); *Tassin v. Hess Marine Transportation, Inc.,* 1990 WL 93831, 1990 U.S.Dist. LEXIS 7932 (E.D.La.1990—Wicker).

is provided in either statute for the exclusion and we have no reason to conclude that the reason for the exclusion is different in the two statutes.

Grubbs points to a recent enactment of a definition of ocean marine insurance the Louisiana legislature placed in the section of the Insurance Code dealing with LIGA. LSA–R.S. 22:1379(9).[5] That definition expressly includes marine protection and indemnity insurance as ocean marine insurance. Grubbs argues that by placing this broad definition of ocean marine insurance only in the section of the insurance code dealing with LIGA—not in the general definition section of the code—the legislature implicitly expressed an intent that this broad meaning of the term should not apply elsewhere. We disagree. The legislature's unexplained decision to include a detailed definition of ocean marine insurance in the section of the code relating to LIGA does not affect the meaning of that term in other parts of the insurance code.

In sum, we see no reason not to apply the following conclusions and reasoning of *Backhus* to today's case:

> [p]rotection and indemnity insurance is consistently treated as marine insurance within the industry. *See* D. Bickelhaupt, General Insurance 542 (10th ed. 1979); W. Rodds, Marine Insurance: Ocean and Inland 51–81 (1970). This common usage, coupled with the inclusion of protection and indemnity insurance under the definition of marine insurance in R.S. 22:6(13), leads to the conclusion that the term "ocean marine insurance" includes protection and indemnity insurance and that protection and indemnity insurance, absent some intent on the part of the legislature to protect individuals entitled to recover under protection and indemnity policies, falls within the "ocean marine insurance" exception to [LIGA's] protection.

*Backhus,* 549 So.2d at 289.

Finding no contrary legislative intent, we conclude that a marine P & I policy is a policy of ocean marine insurance. Thus, no direct action may be maintained against a P & I insurer under the

---

[5]LSA–R.S. 22:1379(9) defines "ocean marine insurance" to include "marine insurance ... which insures against maritime perils or risks, or other related perils or risks, which are usually insured against by traditional marine insurances such as hull and machinery, marine builders' risks, and marine protection and indemnity."

Louisiana Direct Action Statute.[6] The district court properly dismissed Grubb's direct suit against American Steamship.

## III.

The district court also dismissed Grubbs' case against Gulf because the company's corporate charter was dissolved following the conclusion of its bankruptcy proceedings. The court concluded that it no longer had a viable defendant in the case. We disagree with that conclusion.

Louisiana Business Corporation Law provides that "upon issuance of the certificate of dissolution, the corporate existence shall cease as of the effective date stated in the certificate, *except* for the sole purpose of any action or suit commenced theretofore by, or commenced timely against, the corporation." L.S.A.–R.S. 12:148(C) (emphasis added). Thus, actions against dissolved corporations do not abate, even after dissolution. In *River Cities Constr. Co. v. Barnard & Burk, Inc.,* 413 So.2d 666 (La.App. 1st Cir.1982), the plaintiff corporation was dissolved, but on appeal the Louisiana Appellate court remanded the case for substitution of the proper legal successors to the corporation as plaintiffs. The parties in this case did not argue to us, and we do not decide how this case should proceed. We decide only that the dissolution of Gulf is no impediment to the prosecution of Grubbs' action against Gulf's successor.[7]

---

[6]Several district courts have followed this rationale and read *Backhus* to deny the right of an injured person to file a direct action against a P & I insurer. *Delaune v. St. Marine Transportation Co.,* 749 F.Supp. 1463, 1465 (E.D.La.1990); *Primeaux v. Linden, Inc.,* No. 87–1396 (W.D.La. Feb. 28, 1991); *Perreira v. Saint Marine Transportation, Inc.,* No. 89–2844 (E.D.La. Dec. 20, 1989), 1990 WL 120627 (E.D.La.); *Brown Marine Service, Inc. v. The M/V Jenny Lyn,* 1991 WL 72779, 1991 USDist LEXIS 6014 (E.D.La.1991).

[7]Assuming that Gulf was discharged in bankruptcy, we leave to the district court (and perhaps the bankruptcy court) to determine the effect of that discharge on Grubbs' suit. The district and bankruptcy courts should consider allowing Grubbs to proceed against Gulf or its successors to the extent any judgment is covered by liability insurance. The court will want to consider issuing protective orders to prevent enforcement of any judgment against Gulf that is not covered by insurance. This issue has not been briefed to us and we leave the mechanics of any further proceedings to the district court after briefing by the parties.

For the above reasons we affirm the district court's dismissal of American Steamship from this action, reverse the dismissal of Gulf International Marine and remand this case to the district court for further proceedings.

AFFIRMED in part, REVERSED in part and REMANDED.