GRISBAUM, Judge.
This appeal relates to a suit for payments allegedly due under an insurance policy for the sinking of a vessel. We vacate and set aside.
ISSUE
Whether the trial court erred in finding that the insurance policy at issue was not an “ocean marine” policy and was, therefore, covered by the Louisiana Insurance Guaranty Association.
FACTS
On December 11,1987, the plaintiff, Horace Nicholas, purchased a 37-foot vessel from Philip Verdin. He then purchased, on February 26, 1988, from New England International Surety of America, Inc. (New England), an insurance policy covering the vessel. This policy afforded coverage in the amount of $130,000, with a $2,600 deductible.
On April 2, 1988, for apparently unknown reasons, the vessel sank in the Mississippi River. Mr. Nicholas unsuccessfully attempted to collect from New England. He thus filed suit to recover the benefits allegedly due under the policy. On September 22, 1989, New England was declared insolvent, and Mr. Nicholas thereafter amended his petition to name the Louisiana Insurance Guaranty Association (LIGA) as a defendant. It was stipulated that New England was a “member insurer” within the meaning of the LIGA statute.
A bench trial was held on November 20, 1991. The trial court, finding that the claim was covered by the LIGA statute, rendered judgment in favor of Mr. Nicholas in the amount of $130,000, less the $2,600 deductible, plus interests and costs. LIGA now appeals.
LAW
The LIGA law, La.R.S. 22:1375 et seq., was adopted by the Louisiana legislature in 1970 in an effort to lessen the hardships created by insurance company insolvencies. Backhus v. Transit Casualty Co., 549 So.2d 283 (La.1989). The purpose of this association is
*1138 to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.
La.R.S. 22:1376. Thus, in order to transact insurance in the State of Louisiana, all member insurers are required to have and maintain membership in the association. La.R.S. 22:1380.
It is undisputed that, under La.R.S. 22:1377, which defines the scope of the statute, an exclusion is made for “ocean marine insurance.” Thus, LIGA does not cover any claims that arise out of an ocean marine policy. At the time of the incident, the statute provided no definition for “ocean marine insurance.” However, since then, the Louisiana legislature adopted the following definition by Acts 1989, No. 688, § i;
“Ocean marine insurance” includes marine insurance as defined in R.S. 22:6(13), except for inland marine, as well as any other form of insurance, regardless of the name, label or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks, which are usually insured against by traditional marine insurances such as hull and machinery, marine builders’ risks, and marine protection and indemnity. Such perils and risks insured against include without limitation loss, damage or expense or legal liability of the insured for loss, damage, or expense arising out of or incident to ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss or damage to the property of the insured or another person.
La.R.S. 22:1379(9). This amendment was found to be merely interpretative and has been applied retroactively. H & B Constr. Co. of La. v. La. Ins. Guaranty Assoc., 580 So.2d 931 (La.App. 4th Cir.1991), writ denied, 587 So.2d 695 (La.1991).
TRIAL COURT’S FINDINGS
The trial court concluded the policy was not an “ocean marine” policy and that LIGA is responsible for the loss of the boat. In its Reasons for Judgment, the trial court enumerated the following factors which it felt proved that the policy was not an ocean marine policy: (1) New England paid an assessment on the policy and reported writing no ocean marine policies and (2) the policy at issue prohibited commercial use of the vessel.
With respect to the first factor, the trial court stated the following:
Counsel for LIGA explained at trial that each carrier is required to submit to the Commissioner of Insurance an annual report categorizing the type of insurance written so that an assessment may be made according to the number of policies written which are covered by LIGA. Those types of policies which coverage is specifically excluded from LIGA’s scope are not subject to assessment. Therefore, no assessments are due for ocean marine policies.
In oral argument, counsel for LIGA admitted that they are in possession of the disclosure form submitted to the Commissioner of Insurance by New England, and that the form indicates no policies written by New England were categorized as ‘ocean marine.’ Therefore, New England paid an assessment on the policy in question. With this admission before the Court, plaintiff has established a prima facie case that the policy in question is not an ocean marine policy. Although LIGA was given the opportunity to produce documentation or other evidence to refute this conclusion, no documentation was produced. New England’s assessment is based on the policies written, and in order to get the proper credit for policies not subject to assessment they were likely to accurately report any ocean marine policies written by them. A further indication that this is *1139 not an ocean marine policy is that they reported writing no such policies, an indication that they were not in the business of writing ocean marine policies.
(Emphasis supplied by the trial court.)
We disagree.
ANALYSIS
The record shows that counsel for LIGA stipulated that assessments are not paid on ocean marine policies. We note the following exchange during trial:
THE COURT:
We don’t know if particularly there were assessments—
MR. LEWIS:
On this policy, no ma’am.
MS. ATKINSON:
There is no way you could ever trace it back to a particular policy.
THE COURT:
But you could trace it to a particular company, right?
MS. ATKINSON:
New England paid assessments, but not on ocean marine insurance.
Thereafter, counsel for LIGA stated, “There is nothing reported from New England under the category ocean marine insurance. So, they did not pay any assessments for ocean marine.... ” That New England did not report any premiums was reiterated in the following discourse:
“MS. ATKINSON: I really don’t know the answer to that, Your Honor, but New England did not report any premiums for ocean marine insurance and this is an ocean marine policy. THE COURT: They did not report premiums because they are not assessable. MS. ATKINSON: Correct.”
It is evident from the testimony adduced that member insurers do not pay assessments to LIGA for policies issued which are not covered by the LIGA statute. Because ocean marine policies are specifically excluded from the statute, it necessarily and commonsensibly follows that LIGA receives no assessments on policies written for ocean marine insurance.
NOWHERE in the record is it shown that New England did not write ocean marine insurance policies; rather, the record supports a finding that New England did not pay LIGA any assessments for ocean marine insurance policies. This finding is logical and consistent with the LIGA statutory scheme, that is, LIGA collects assessments only on policies covered therein. Ergo, the trial court erred in concluding that New England reported writing no ocean marine insurance policies.
Next, we turn to the trial court’s finding that, because it specified the vessel be used only for non-commercial activities, the policy is not an ocean marine insurance policy.
We note that the trial court, in its Reasons for Judgment, stated, in pertinent part, that
The fact that commercial activity is prohibited by the terms of the policy is inconsistent with traditional ocean marine coverage. The absence of commercial coverage coupled with the admission that this particular policy was not categorized by the underwriter as ocean marine leads to the conclusion that LIGA’s coverage extends to this policy.
No cases in Louisiana’s jurisprudence involved hull damage to a vessel restricted to private use. (See Justice Watson’s litany of cases in Deshotels v. SHRM Catering Services[] Inc., 538 So.2d 988 (1989).) Although some language from Deshotels seems to say in dicta that all insurance for hull damage falls into the ocean marine exclusion, that is not the holding of the case. The case simply held that an insurance policy which insures an employer against liability to employees is not a policy of “ocean marine” insurance merely because it embraces some maritime risks. Likewise, an insurance policy which restricts use of a vessel to non-commercial private use is not an ocean marine policy simply because it insures a vessel’s hull damage.
Mr. Nicholas cites the concurring opinion of Supreme Court Justice Lemmon in Deshotels v. SHRM Catering Serv., Inc., 538 So.2d 988 (La.1989). Justice Lemmon stated therein that the statute
was enacted to protect the Louisiana “citizen on the street” who, either as a claim *1140 ant or as a policy holder, might be injured by the insolvency of an insurance company.... The act excluded most forms of commercial insurance, since these are not generally written for the average citizen. Ocean marine insurance, a form of commercial insurance which insures ships, cargo and goods, is excluded.
Id. at 993 (footnote omitted).
We take note of this “concurrence;” however, Mr. Nicholas cites no, and we know of no rule that ocean marine insurance is restricted to commercial vessel use only. Thus, we conclude that the non-commercial nature of the policy does not, of itself, prevent its being classified as an ocean marine policy.
We now turn to the terms of the policy at issue and the controlling jurisprudence. We see that, by its own terms, the policy at issue covers “hull and machinery” and “P & I” (protection and indemnity). Pursuant to the aforementioned new amendment to the statute which adds a definition of ocean marine insurance, the term “ocean marine insurance” includes
marine insurance ... as well as any other form of insurance, regardless of the name, label or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks, which are usually insured against by traditional marine insurances such as hull and machinery ... and marine protection and indemnity.
La.R.S. 22:1379(9). Thus, this type of policy appears to fall within the above definition of ocean marine insurance.
Finally, the jurisprudence which predates the new amendment also supports the conclusion that the policy is an ocean marine insurance policy. The Louisiana Supreme Court stated
A contract of marine insurance: “is a contract whereby the insurer undertakes to indemnify the assured, in manner and to the extent thereby agreed, against marine losses, that is to say, the losses incident to a marine adventure.” There is a marine adventure when a ship, cargo, goods or other movables are exposed to maritime perils, i.e., the perils of the sea.
Deshotels, supra, at 992 (footnote omitted).
Thus, the Deshotels court concluded that “the term ‘ocean marine’ is used as a synonym for traditional marine insurance, that is, property insurance on hulls, freight and cargoes.” Id. at 992 (citation omitted). The Backhus court also noted that “ocean marine insurance” covers, inter alia, insurance against loss or damage “ ‘to vessels in connection with any or all risks or perils of navigation, transit or transportation....’ ” Backhus, supra, 549 So.2d at 287. Accordingly, this policy for hull and machinery is an ocean marine policy.
Additionally, the P & I (protection and indemnity) aspect of the policy qualifies it as ocean marine, both under the new definition of La.R.S. 22:1379(9) and our jurisprudence. As the Backhus court stated: “the term ‘ocean marine insurance’ includes protection and indemnity insurance and that protection and indemnity insurance ... falls within the ‘ocean marine insurance’ exception to Louisiana Insurance Guaranty Association protection.” Backhus, supra, at 289. Thus, it is well-established in our jurisprudence that protection and indemnity insurance is ocean marine insurance. See also Grubbs v. Gulf Int’l Marine, Inc., 975 F.2d 186 (5th Cir.1992); Sifers v. Gen. Marine Catering Co., 892 F.2d 386 (5th Cir.1990); Delaune v. Saint Marine Transp. Co., 749 F.Supp. 1463 (E.D.La.1990).
Lastly, we note that the testimony of Robert W. Breeden, Jr., an expert in the marine insurance industry and the only expert who testified at trial, supports a finding that the policy is an ocean marine insurance policy. He first indicated that two coverages are provided by the policy, that is, protection and indemnity coverage and hull insurance coverage. He testified that this type of policy, namely, hull and P & I, has always been classified as ocean marine insurance. He further stated that ocean marine insurance is coverage of the whole vessel itself, as is found with the present policy.
*1141 Considering the foregoing, we come to the conclusion that the policy at issue is an ocean marine insurance policy, and, as such, is excluded from the LIGA statute; therefore, the trial court erred in finding LIGA liable.
For the reasons assigned, the trial court’s judgment dated July 8,1992 is hereby vacated and set aside. All costs of this appeal are to be assessed against the appel-lee.
VACATED AND SET ASIDE.