WEBSTER, Judge.
Appellant (FIGA) seeks review of a final judgment which held that FIGA, as statutory successor to the obligations of appellee’s (Pilings’) insolvent insurer, was liable for expenses incurred by Pilings in defense of a prior action brought against it by an employee, plus costs and attorney fees incurred in prosecuting the action against FIGA. FIGA raises a number of issues. However, the only issue which merits discussion is whether the insurance upon which Pilings relied in making its demand upon FIGA to provide a defense in the prior action was “ocean marine” or “wet marine” insurance not within the scope of the Florida Insurance Guaranty Association Act (the Act). §§ 631.50-631.70, Fla. Stat. (1985). We conclude that the insurance was neither “ocean marine” nor “wet marine” and, therefore, affirm.
The material facts are not in dispute. An employee of Pilings was injured while working as a diver from a barge owned by Pilings. At the time of that injury, Pilings had in effect a workers’ compensation and employer’s liability insurance policy, which included a maritime coverage endorsement, issued by Midland Insurance Company. Shortly after the injury, the Superintendent of Insurance of New York issued a notice informing Pilings that Midland Insurance Company was being liquidated and would cease to honor its obligations under the policy. Initially, FIGA stepped in and paid benefits to the employee pursuant to the workers’ compensation portion of the policy-
Approximately a year after his injury, the employee filed a Jones Act (46 *533 U.S.C.App. § 688) suit against Pilings in federal court, claiming that he had been a seaman at the time of his injury. From the outset, Pilings denied that the employee qualified as a seaman for Jones Act purposes. Shortly after the suit had been filed, Pilings notified FIGA, requesting that FIGA provide a defense pursuant to the maritime coverage endorsement to the policy. FIGA rejected the request on the ground that it had no responsibility under the Act for claims arising under maritime law. The federal court ultimately ruled that the employee had not been a seaman for Jones Act purposes, and FIGA settled the employee’s claim pursuant to the workers’ compensation provisions of the policy.
In the action which is the subject of this appeal, Pilings sued FIGA, seeking to recover what it had spent in defense of the employee’s Jones Act claim, including attorney fees, costs and interest. FIGA responded that it was not liable to Pilings because the applicable coverage was either “ocean marine” or “wet marine” insurance not within the scope of the Act. The trial court concluded that the workers’ compensation and employer’s liability insurance policy with a maritime coverage endorsement was neither “ocean marine” nor “wet marine” insurance for purposes of the Act. Accordingly, it entered judgment for Pilings. It is from that judgment that FIGA appeals.
Section 631.52, Florida Statutes (1985), states that the Act
shall apply to all kinds of direct insurance except life, title, surety, disability, credit, mortgage guaranty, surplus lines, warranty, motor vehicle service, ambulance service, optometric service plan, pharmaceutical service plan, dental service plan, preneed funeral merchandise or service, health care service, health maintenance, prepaid health clinic, legal expense, ocean marine, and wet marine insurance and self-insurance.
(Emphasis added.) Neither “ocean marine” nor “wet marine” insurance is statutorily defined. However, the parties' agree that “wet marine” insurance is synonymous with “wet marine and transportation” insurance; and that, for purposes of this action, there is no distinction between “ocean marine” and “wet marine” insurance.
“Wet marine and transportation” insurance is defined as
that part of marine insurance which includes only:
(a) Insurance upon vessels, crafts and hulls and of interests therein or with relation thereto;
(b) Insurance of marine builders’ risks, marine war risks, and contracts of marine protection and indemnity insurance;
(c) Insurance of freights and disbursements pertaining to a subject of insurance coming within this definition; and
(d) Insurance of personal property and interests therein, in course of exportation from or importation into any country, or in course of transportation coastwise or on inland waters, including transportation by land, water, or air from point of origin to final destination, in respect to, appertaining to, or in connection with any and all risks or perils of navigation, transit, or transportation, and while being prepared for and while awaiting shipment, and during any delays, storage, transshipment, or reshipment incident thereto.
§ 624.607(2), Fla.Stat. (1985) (emphasis added). FIGA argues that the maritime coverage endorsement to the policy qualifies as a contract of “marine protection and indemnity” insurance, which is defined as
insurance against, or against legal liability of the insured for, loss, damage, or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair, or construction of any vessel, craft, or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness, or death or for loss of or damage to the property of another person.
§ 624.607(l)(b), Fla.Stat. (1985) (emphasis added).
*534 Pilings responds that, in determining whether the Act applies, one must look to the kind of policy involved, rather than to the particular risk. Because the policy is a workers’ compensation and employer’s liability insurance policy rather than an “ocean marine” or a “wet marine” insurance policy, Pilings argues that the Act clearly applies. In support of this argument, Pilings relies upon the decision in Deshotels v. SHRM Catering Services, Inc., 538 So.2d 988 (La.1989). In that case, construing a provision of the Louisiana Insurance Guaranty Association Law which is very similar to section 631.52 of our Act, the Louisiana Supreme Court concluded that the statute listed “different kinds of insurance policies, rather than different risks.” Id. at 993. Accordingly, it concluded, further, that the statute did not exclude, as “ocean marine” insurance, a workmen’s compensation and employer’s liability policy “which incidently [sic] covered] risks associated with maritime activities.” Id. While we find the Deshotels analysis persuasive, it is unnecessary for us to decide whether section 631.52 refers to policies or to risks because we conclude that, even if, as FIGA argues, the section refers to risks rather than to policies, the Act applies to the risk covered by the maritime coverage endorsement.
The maritime coverage endorsement adds to the employer’s liability portion of the policy coverage for bodily injuries to employees who are either masters or members of the crew of supply boats, provided that such injury occurs in the course and scope of that employment. It expressly excludes from coverage “bodily injury covered by a Protection and Indemnity Policy or similar policy” issued to Pilings or for its benefit. While such a risk may be included in a policy or contract of “marine protection and indemnity” insurance, such insurance generally covers many other risks as well, none of which is addressed in the maritime coverage endorsement. Admiralty & Maritime Law Committee, American Bar Association, Marine P & I Policy Annotations (1982); Leslie J. Buglass, Marine Insurance and General Average in the United States 363-95 (2d ed. 1981); 2 Alex L. Parks, The Law and Practice of Marine Insurance and Average 833-1043 (1987); Thomas J. Schoenbaum, Admiralty and Maritime Law § 18-5 (1987).
Reading the maritime coverage endorsement in context with the rest of the policy, its appears to us relatively clear that the endorsement is not (and was not intended to be) “marine protection and indemnity” insurance, as that term is defined in section 624.607(l)(b), Florida Statutes (1985). Therefore, it is not “ocean marine” or “wet marine” insurance for purposes of section 631.52. Instead, we believe that the maritime coverage endorsement falls within the definition of “workers’ compensation and employer’s liability” insurance, set forth in section 624.605(l)(c), Florida Statutes (1985), as a type of “casualty” insurance— “Insurance of the obligations accepted by, imposed upon, or assumed by employers under law for death, disablement, or injury of employees.”
Moreover, we note that, even if the maritime coverage endorsement qualified as “marine protection and indemnity” insurance under section 624.607(l)(b) and, therefore, as “wet marine and transportation” insurance under section 624.607(2), that does not necessarily mean that the Act would not apply. Section 631.52 expressly provides that the Act applies to “all kinds of direct insurance” except those listed. “Kinds of insurance” are defined in part V of chapter 624, Florida Statutes (1985). The introductory section to part V reads:
Definitions not mutually exclusive.— It is intended that certain insurance coverages may come within' the definitions of two or more kinds of insurance as defined in this part of this chapter. The inclusion of such coverage within one definition shall not exclude it from being considered as any other kind of insurance, the definition of which reasonably includes such coverage.
§ 624.601, Fla.Stat. (1985). Thus, even if the maritime coverage endorsement did fit within the definition of “marine protection and indemnity” insurance and, thereby, “wet marine and transportation” insurance; it also fits the definition of “workers’ com *535 pensation and employer’s liability” insurance and, therefore, “casualty” insurance. Neither “workers’ compensation and employer’s liability” insurance nor “casualty” insurance is exempted from the scope of the Act.
We conclude that the trial court correctly decided this action. Accordingly, we affirm.
AFFIRMED.
JOANOS, C.J., and ZEHMER, J., concur.